IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES SAVARY

   v. : Civil Action No. DKC 10-2159

CODY TOWING AND RECOVERY, INC.

**MEMORANDUM OPINION**

Presently pending in this consumer lending case is a motion to dismiss (ECF No. 13) filed by Defendant Cody Towing and Recovery, Inc. ("Cody Towing"). Because the issues have been fully briefed and no hearing is necessary, the court now rules. *See* Local Rule 105.6. For the reasons that follow, the motion to dismiss will be granted.

**I. Background**

According to the complaint, Plaintiff James Savary purchased a 2006 Polaris ATV from Criswell Power Sport, LLC on April 10, 2006. (ECF No. 2 ¶ 13). Savary financed his purchase by entering into a Retail Installment Sales Contract ("RISC") and closed-end loan with Mariner Finance, LLC ("Mariner Finance") on the same day. (*Id.* ¶¶ 13-14). As part of the lending transaction, Mariner Finance took a lien on the ATV. (*Id.* ¶ 16).

The complaint states that Savary later became delinquent on the loan and was unable to make his scheduled payments. (*Id.* ¶ 19). As a result, in October 2009, Mariner Finance asked Cody Towing to go to Savary's home and repossess the ATV. (*Id.* ¶¶ 20, 27). Cody Towing successfully repossessed the ATV. (*id.* ¶¶ 21, 28). Acting as Mariner Finance's agent, it also seized Savary's 2004 Chevrolet Truck. (*Id.* ¶¶ 26, 31, 37). Mariner Finance did not hold a lien on the truck and the RISC did not refer to that vehicle. (*Id.* ¶¶ 24-25, 29, 38-39).

On August 21, 2009, Mariner Finance sued Savary in the District Court of Maryland for Montgomery County for a deficiency judgment of $4,789.91, reflecting the amount remaining on the RISC. In response, Savary filed a counterclaim against Mariner Finance. (ECF NO. 9-2). Of relevance here, Savary asserted that "[e]ven though Mariner Finance had no interest in the 2004 Chevy Truck, on or around early October 2004 Savary's 2004 Chevy Truck was seized and repossessed by Mariner Finance and/or its agents without any legal right to do so." (*Id.* ¶ 22). Savary's counterclaim included allegations that the wrongful repossession of the truck constituted

conversion and a violation of the Maryland Consumer Debt Collection Act ("MCDCA"). (*Id.* ¶¶ 53-69).[1]

Following a bench trial on February 26, 2010, the parties submitted post-trial briefing. Savary's post-trial submission again extensively discussed the allegedly wrongful repossession of his 2004 Chevy Truck. (*See, e.g.*, ECF No. 9-3, at 5-7 ("Mariner Finance's action in repossessing Savary's 2004 Chevrolet Truck even though Mariner Finance did not create a valid security interest and had no security interest in the 2004 Chevrolet Truck makes Mariner Finance liable under each count of the Counterclaim-Complaint.")). A few months later, on July 19, 2010, the district court awarded Mariner Finance a $4,470.56 judgment. (ECF No. 9-4, at 5). In reaching that figure, the court determined that Mariner Finance had unknowingly "repossessed the truck absent a security agreement including the truck." (*Id.*). Consequently, the court valued Savary's damages "due to the repossession of his truck and his loss for four weeks" amounted to $565.64. (*Id.*). On September 20, 2010, Savary's motion to alter or amend the judgment was denied.

---

[1] Savary also asserted a breach of contract claim, as well as claims under the Maryland Consumer Protection Act ("MCPA") and Maryland the Maryland Credit Grantor Closed End Credit Provisions ("CLEC").

Three weeks before the district court entered its judgment on Savary's counterclaim against Mariner Finance, on June 28, 2010, Savary filed suit against Cody Towing in the Circuit Court for Montgomery County. (ECF No. 1 ¶ 1). That complaint includes one count premised on conversion and three additional counts asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), the MCDCA, and the MCPA. (ECF No. 2). After being served on July 9, Cody Towing removed the complaint to this court on August 6, 2010. (ECF No. 1). Cody Towing has now moved to dismiss. (ECF No. 9).

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999).[2] Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.

---

[2] Cody Towing has also moved to dismiss under Rule 12(b)(7). For reasons that will soon become evident, the court need not address that standard.

4

R.Civ.P. 8(a)(2). Under some circumstances, the defense of res judicata may be raised in a motion to dismiss:

> Although an affirmative defense such as res judicata may be raised under Rule 12(b)(6) "only if it clearly appears on the face of the complaint," *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993), when entertaining a motion to dismiss on the ground of res judicata, a court may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact, *see Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992); *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984); *Briggs v. Newberry County Sch. Dist.*, 838 F.Supp. 232, 234 (D.S.C. 1992), *aff'd*, 989 F.2d 491 (4th Cir.1993) (unpublished).

*Andrews v. Daw*, 201 F.3d 521, 524 (4th Cir. 2000).

**III. Analysis**

Cody Towing maintains that res judicata bars this suit, as it relates to the same matter litigated in Savary's earlier counterclaim in state court. The doctrine of res judicata encompasses two concepts: (1) claim preclusion and (2) issue preclusion, sometimes called collateral estoppel. *In re Varat Enters., Inc.*, 81 F.3d 1310, 1315 (4th Cir. 1996) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). Cody Towing here relies on the claim preclusion. (ECF No. 9-1, at 4).

Claim preclusion "bars the relitigation of a claim if there is a final judgment in a previous litigation where the parties, the subject matter and causes of action are identical or

5

substantially identical as to issues actually litigated and as to those which could have or should have been raised in the previous litigation." *Andrulonis v. Andrulonis*, 193 Md.App. 601, 617 (2010) (quotation marks omitted). Thus, under Maryland law,[3] claim preclusion "embodies three elements: (1) the parties in the present litigation are the same or in privity with the parties to the earlier litigation; (2) the claim presented in the current action is identical to that determined or that which could have been raised and determined in the prior litigation; and (3) there was a final judgment on the merits in the prior litigation." *Comptroller of Treasury v. Sci. Applications Int'l Corp.*, 405 Md. 185, 195-96 (2008) (quoting *R & D 2001, LLC v. Rice*, 402 Md. 648, 663 (2008)). The doctrine is meant to "restrain[] a party from litigating the same claim repeatedly and ensure[] that courts do not waste time adjudicating matters which have been decided or *could have been* decided fully and fairly." *Anne Arundel Cnty. Bd. of Educ. v. Norville*, 390 Md. 93, 107 (2005) (emphasis in original).

---

[3] Because the prior action was in Maryland state court, Maryland law determines the preclusive effect of the prior judgment. *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 162 (4th Cir. 2008).

6

**A. Same Parties**

The first question here is whether the present and former parties are the same. "Whether the parties are the same or in privity with a party in the prior proceeding is a question of law." *Kim v. Council of Unit Owners for Collington Ctr. III Condo.*, 180 Md.App. 606, 617 (2008).

Savary was a party to both the Maryland state action and this case, but Cody Towing was not a *named* party to the prior action. Cody Towing suggests, however, that Maryland law does not demand complete identity of the parties in both actions, insisting that "[m]utuality is not required to use [claim preclusion] as a shield under Maryland law." (ECF No. 9-1, at 5 (citing *Tunnel/Hester Joint Venture v. Tunnel Elec. Constr. Co., Inc.*, 240 F.Supp.2d 410, 413 (D.Md. 2002)).

More than 25 years ago, the Fourth Circuit recognized that a plaintiff is barred by res judicata from bringing a second action against an employee who was not a party to the first suit brought against the employer. *Adkins v. Allstate Ins. Co.*, 729 F.2d 974, 975 n.1 (4th Cir. 1984). Many Maryland courts have also endorsed a more flexible approach to the mutuality requirement. In *Caldor, Inc. v. Bowden*, 330 Md. 632, 657 (1993), for instance, the Court of Appeals of Maryland declared that it had "long ago discarded the traditional requirement of

7

strict mutuality of parties in the context of res judicata and collateral estoppel in civil cases."[4] Several other decisions have also endorsed the view that that the "wall of mutuality" is not impenetrable. *Pat Perusse Realty v. Lingo*, 249 Md. 33, 36 (1968) ("The wall of mutuality having never been solid, the likely has happened and courts have gradually widened the breaches."); *accord deLeon v. Slear*, 328 Md. 569, 588 n.5 (1992); *MPC, Inc. v. Kenny*, 279 Md. 29, 35 (1977); *Green v. Ford Motor Credit Co.*, 152 Md.App. 32, 61 (2003); *Harbin v. H.E.W.S., Inc.*, 56 Md.App. 72, 81-82 (1983); *Klein v. Whitehead*, 40 Md.App. 1, 17-18 (1978).

On the other hand, the mutuality requirement for claim preclusion has not been entirely extinguished in the state of Maryland. In *Prince George's County v. Brent*, 414 Md. 334, 341-48 (2010), for instance, the Court of Appeals considered whether a prior lawsuit brought against a county – based on the negligent acts of the county's police officer – barred a subsequent lawsuit against the individual officer. After the court determined there was no privity between the parties, the court held that claim preclusion did not bar the suit against

---

[4] The waning influence of mutuality in Maryland can probably be traced to the Court of Appeals' 1968 decision in *Pat Perusse Realty v. Lingo*, 249 Md. 33 (1968).

the officer.  *Id.* at 349.  The *Brent* decision seems more in line with the general trend in other jurisdictions.  *See Nevada v. United States*, 463 U.S. 110, 143 (1983) ("While mutuality has been for the most part abandoned in cases involving collateral estoppel, it has a remained a part of the doctrine of *res judicata*."); *accord* 47 Am.Jur.2d Judgments § 577 (2010).

In any event, Cody Towing's view of mutuality is something of a moot point, as Cody Towing and Mariner Finance were in privity with one another.  "Privity in the res judicata sense generally involves a person so identified in interest with another that he represents the same legal right."  *FWB Bank v. Richman*, 354 Md. 472, 498 (1999).  More specifically:

> . . . for the purpose of the application of the rule of *res judicata*, the term "parties" includes all persons who have a direct interest in the subject matter of the suit, and have a right to control the proceedings, make defense, examine witnesses, and appeal if an appeal lies.  So, where persons, although not formal parties of record, *have a direct interest in the suit*, and in the advancement of their interest take open and substantial control of its prosecution, or *they are so far represented by another that their interests receive actual and efficient protection*, any judgment rendered therein is conclusive upon them to the same extent as if they had been formal parties.

*Kim*, 180 Md.App. at 617 (quoting *Douglas v. First Sec. Fed. Sav. Bank, Inc.*, 101 Md.App. 170, 183 (1994)) (emphasis in original).

Savary recognizes that Cody Towing was an agent of Mariner Finance, but insists that the company "is responsible for its own actions and is not the same party as Mariner Finance." (ECF No. 11, at 6 n.3). The United States Court of Appeals for the Fourth Circuit, however, has interpreted Maryland law to "recognize[] that a principal and his agent are in privity." *Kutzik v. Young*, 730 F.2d 149, 152 (4th Cir. 1984) (citing *McKinzie v. Baltimore & Ohio R.R.*, 28 Md. 161 (1868)); *cf. Proctor v. Metro. Money Store Corp.*, 645 F.Supp.2d 464, 491 (D.Md. 2009) (finding mortgagors were in privity with their attorneys for purposes of res judicata). The Fourth Circuit's interpretation, again, follows the ordinary path taken in other jurisdictions. *See, e.g., ABS Indus., Inc. ex rel. ABS Litig. Trust v. Fifth Third Bank*, 333 F.App'x 994, 999 (6th Cir. 2009) ("[I]t is well settled that a principal-agent relationship satisfies the privity requirement of res judicata where the claims alleged are within the scope of the agency relationship."); *accord* 47 Am.Jur.2d Judgments § 613 (2010) ("Where the relationship between two parties is analogous to that of principal and agent, the rule is that a judgment in favor of either, in an action brought by a third party, rendered upon a ground equally applicable to both, should be accepted as

conclusive against the plaintiff's right of action against the other, or as to any issues decided in the prior action.").

Savary's complaint in this case places a heavy emphasis on the agency relationship between Cody Towing and Mariner Finance. (*See, e.g.*, ECF No. 2 ¶ 31 ("At all times relevant to this complaint, Cody Towing acted as the agent of Mariner Finance in its efforts to repossess the 2004 Truck and to collect the alleged debt.")). His counter-complaint against Mariner Finance in state court did the same. (*See, e.g.*, ECF No. 9-2 ¶ 22 ("Savary's 2004 Chevy truck was seized and repossessed by Mariner Finance and/or its agents.")). And as a general matter, it is clear that the liability of Cody Towing is inextricably intertwined with the liability of Mariner Finance. (*See, e.g.*, ECF No. 2 ¶¶ 39-40 ("[A]t no time has Mariner Finance ever had an enforceable security interest in the 2004 Chevy Truck. Therefore, Cody Towing never had a right to take Savary's property.")). Accordingly, it can be said that Cody Towing's interests were fairly represented by Mariner Finance in the first action, such that they were in privity with one another. The first element of claim preclusion is met.

### B. Same Claims

The next question is whether "the claim presented in the current action is identical to that determined or that which

11

could have been raised and determined in the prior litigation." *Comptroller of Treasury*, 405 Md. at 195-96. Here, of course, the particular claims against Cody Towing were not all directly resolved in the prior action. In this situation, the court "must determine whether the matter currently before it was fairly included within the claim or action that was before the earlier court and could have been resolved in that court." *Anne Arundel Cnty. Bd. of Educ.*, 390 Md. at 108 (quoting *FWB Bank*, 354 Md. at 493). That determination is made using the transactional approach articulated in the Restatement (Second) of Judgments § 24. "Under the transactional approach, if the two claims or theories are based upon the same set of facts and one would expect them to be tried together ordinarily, then a party must bring them simultaneously. Legal theories may not be divided and presented in piecemeal fashion in order to advance them in separate actions." *Id.* at 109. The approach has been termed a "broad, inclusive test." *W. Md. Wireless Connection v. Zini*, 601 F.Supp.2d 634, 641 (D.Md. 2009).

The claims in the present and the former action are part of the same transaction. Maryland courts have indicated that claims involve the same "transaction" when they are "related in time, space, origin, or motivation." *Arundel Cnty. Bd. of Educ.*, 390 Md. at 109 (quoting *FWB Bank*, 354 Md. at 493). Many

12

of the claims in Savary's first action centered upon the wrongful repossession of the 2004 Chevy Truck – a single event taking place on a single day - that now forms the basis for his claims against Savary Towing. The claims are not just "related" in time, space, and origin; they are identical. (*Compare* ECF No. 11, at 4 ("Savary also alleged claims [in the state action] against Mariner Finance for its part in having Savary's 2004 Chevrolet Truck repossessed.") *with* 5 ("All of these allegations [in the pending case] are based on Cody Towing and Recovery's repossession of Savary's 2004 Chevrolet Truck.")).

Rather than focusing on the transaction underlying the first action, Savary focuses on the nature of the claims he asserted. He argues that that he did not assert an FDCPA claim in the state case and maintains that he must present "different proof" in his claim under the MCDCA. (ECF No. 11, at 10). Savary's claim-based approach, however, is contrary to the transactional approach used in Maryland:

> The present trend is to see claim in *factual terms* and to make it coterminous with the transaction *regardless of the number of substantive theories, or variant forms of relief flowing from those theories*, that may be available to the plaintiff; regardless of the number of primary rights that may have been invaded; and *regardless of the variations in the evidence needed to support the theories or rights*. The transaction is the basis of the litigative unit or entity which may not be split.

*Gonsalves v. Bingel*, 194 Md.App 695, 711 (2010) (quoting Restatement (Second) of Judgments § 24 cmt. a) (emphasis added). Were the court to apply claim preclusion in the manner Savary suggests, it "would allow parties to frustrate the goals of *res judicata* through artful pleading and claim splitting given that '[a] single cause of action can manifest itself into an outpouring of different claims, based variously on federal statutes, state statutes, and the common law.'" *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004) (quoting *Kale v. Combined Ins. Co. of Am.*, 923 F.2d 1161, 166 (1st Cir. 1991)).

Savary separately asserts that he could not have brought his claims against Cody Towing in the prior action, as he "had no right to join [Cody Towing] into the original District Court Action as a third-party defendant." (ECF No. 11, at 6). He recognizes that Maryland Rule 3-331(c) allows counter-claimants to join third parties to their counterclaims, but argues that Maryland Rule 3-332(a) limits such joinder to a "person not previously a party to the action who is or may be liable to the [original] defendant for all or part of a[n original] plaintiff's claim against the [original] defendant." (*Id.* at 8). Applying this logic, Savary says he could not have joined Cody Towing to his counterclaim because Cody Towing was not liable to Savary for part of Mariner Finance's claim against

14

Savary. *See, e.g., Esslinger v. Baltimore City*, 95 Md.App. 607, 782-83 (1993) (finding no claim preclusion where plaintiff was unable to join his claim in second action to first action).

Savary's argument overlooks the difference between adding a party to a counter-claim and filing a third-party complaint. The rules applicable to third-party complaints do not apply to the mere addition of a party to a counterclaim. *See Goldstein & Bardon Chtd. v. Chesley*, 375 Md. 244, 255 n.1 (2003) (distinguishing between a third-party complaint and adding a party to a counterclaim); *cf. Legion Ins. Co. v. Family Serv., Inc.*, 561 F.Supp.2d 232, 236 (D.R.I. 2008) (same in federal rules context). While third-party complaints set forth a theory of secondary liability, counterclaims provide for primary liability; a third-party complaint is contingent on the outcome of the "main" claim, a counterclaim is not. Thus, different rules apply. So long as a defendant has stated a "cognizable counterclaim against an original party to the action," *Billman v. State of Md. Deposit Ins. Fund Corp.*, 88 Md.App. 79, 95 (1991), he may join an additional party to his counterclaim.[5] Once Savary asserted his counterclaims against Mariner Finance,

---

[5] *Goldstein* and *Billman* address Maryland Rules 2-331 and 2-332, which apply in Circuit Court. Those rules are identical, in relevant part, to the applicable District Court rules applied in this case, Maryland Rules 3-331 and 3-332.

he could have joined Cody Towing under Rule 3-331(c). Consequently, his claims in this case are identical to those that could have been raised in the Maryland state action.

**C. Final Judgment**

Lastly, there must be a valid final judgment in the state court action in order for it have preclusive effect. Savary suggests the judgment is not final because (1) he filed a motion to alter or amend the judgment; and (2) the district court retains revisionary powers over the judgment pursuant to Maryland Rule 3-534. He terms "any request for *res judicata* . . . premature." (ECF No. 11, at 11).

The request is no longer premature because, as the state court's docket sheet reflects, Savary's motion to alter or amend the state judgment was denied on September 20, 2010.[6] There is no indication that any appeal was filed from that decision.[7] Barring fraud, mistake, or "irregularity," the Maryland district court had the power to revise its judgment for 30 days after the

---

[6] The court may take judicial notice of "the records of a court of record," including a docket sheet. *Lolavar v. de Santibanes*, 430 F.3d 221, 225 n.2 (4th Cir. 2005).

[7] Even if Savary had appealed, the Maryland Court of Special Appeals has ruled that "the pendency of an appeal does not affect the finality of a judgment for res judicata purposes." *Campbell v. Lake Hallowell Homeowners Ass'n*, 157 Md.App. 504, 525 (2004).

entry of its judgment – and that period has now passed. Accordingly, the unappealed final judgment of the state district court is a final judgment carrying preclusive effect.

Because all three of the necessary elements for claim preclusion are present, Savary's claims against Cody Towing must be dismissed. In light of this outcome, there is no need to address Cody Towing's remaining arguments.

## IV. Conclusion

For the foregoing reasons, the motion to dismiss filed by Cody Towing will be granted. A separate order will follow.

                    /s/
DEBORAH K. CHASANOW
United States District Judge
